UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LORILLARD TOBACCO COMPANY,      )
a Delaware corporation,          )
                                 )      Case No. 10-01886
            Plaintiff,           )
                                 )      Hon. John R. Adams
vs.                              )
                                 )
HAMDEN, INC. d/b/a DOWNTOWN CHECK )
CASHING and MY MARKET, an        )
Ohio corporation,                )
                                 )
            Defendant.           )
_____

**PLAINTIFF LORILLARD TOBACCO COMPANY'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Lorillard Tobacco Company ("Lorillard"), through its counsel, Dickinson Wright PLLC, moves for summary judgment pursuant to Fed. R. Civ. P. 56 on Lorillard's claims brought against Defendant Hamden, Inc. d/b/a Downtown Check Cashing and My Market ("Defendant") because there is no genuine issue of material fact as to Defendant's liability for engaging in selling and/or offering for sale counterfeit NEWPORT® cigarettes.  In support of its Motion, Lorillard relies upon the authority and facts set forth in the accompanying Brief in Support of Lorillard's Motion for Summary Judgment.

Lorillard sought concurrence in the relief requested by this Motion, which has not been forthcoming.  Therefore, it is necessary to bring this Motion for hearing.

WHEREFORE, Lorillard requests that its Motion be granted in its entirety.

Respectfully submitted,

By: /s/ Kelley M. Haladyna _____
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500
khaladyna@dickinsonwright.com
MI Attorney Bar No. P63337
Admitted Pro Hac Vice

Dated:  May 25, 2011

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO COMPANY,<br>a Delaware corporation, | ) | |
| | ) | |
| | ) | Case No. 10-01886 |
| Plaintiff, | ) | |
| | ) | Hon. John R. Adams |
| vs. | ) | |
| | ) | |
| HAMDEN, INC. d/b/a DOWNTOWN CHECK | ) | |
| CASHING and MY MARKET, an | ) | |
| Ohio corporation, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**PLAINTIFF LORILLARD TOBACCO COMPANY'S**
**<u>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

ISSUES PRESENTED................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... iii

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................2

      A.    The Parties .........................................................................................2

      B.    Lorillard's Registered Trademarks ....................................................3

      C.    The Discovery Of Counterfeit NEWPORT® Cigarettes At Defendant's Store And The Instant Lawsuit .........................................................3

III.    LEGAL ARGUMENT....................................................................................5

      A.    Standard Of Review ...........................................................................5

      B.    Summary Judgment Is Appropriate As To Lorillard's Counterfeiting And Infringement Of Federally Registered Trademarks Claim Under 15 U.S.C. § 1114(1)...........................................................................................6

            1.    Lorillard is the Owner of Protectable Trademarks ..................7

            2.    Defendant's Use of Lorillard's Trademarks is Likely to Cause Confusion Concerning the Origin of the Goods ......................7

      C.    Summary Judgment Is Appropriate As To Lorillard's Unfair Competition, False Designations, Descriptions And Representations Claim Under 15 U.S.C. § 1125(a) ................................................................................12

      D.    Summary Judgment Is Appropriate As To Lorillard's Dilution Claim Under 15 U.S.C. § 1125(c) ..............................................................13

      E.    Summary Judgment Is Appropriate As To Lorillard's State Law Claims ..........16

      F.    Defendant's Sale And/Or Offering For Sale Of Counterfeit NEWPORT® Brand Cigarettes Was Done Willfully Or With A Reckless Disregard for Lorillard's Protected Marks, Thereby Subjecting Defendant to Increased Damages.................................................................................17

IV.    CONCLUSION.............................................................................................20

### <u>ISSUES PRESENTED</u>

I.     Has liability been established under the Lanham Act, 15 U.S.C. § 1114, *et seq*., and other federal and state statutes, when counterfeit cigarettes were found, offered for sale, and/or sold on Defendant's premises?

Plaintiff answers "yes"


II.    Was Defendant's conduct willful in offering and selling counterfeit cigarettes to the public?

Plaintiff answers "yes"

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Audi AG v. D'Amato*, 381 F. Supp.2d 644 (E.D. Mich. 2005) .................................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 5, 6

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996) ......................................................................................................... 17

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275 (6th Cir. 1997) ........................................................................................... 6, 7

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 462 (6th Cir. 1982) ........................................................................................................ 7

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 n.6 (7th Cir. 1992) ............................................................................................... 7

*Homeowners Group, Inc. v. Home Marketing Specialists*, 931 F.2d 1100 (6th Cir. 1991)6, 7, 9, 10

*Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419 (6th Cir. 1999) ........................... 11

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ........................................................ 12

*Klepper v. First M. Bank*, 916 F.2d 337 (6th Cir. 1990) ............................................ 5

*Kraft General Foods, Inc. v. Allied Old English*, 831 F. Supp. 123 (S.D.N.Y. 1993) ................. 9

*Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003 Ohio 5077, 797 N.E.2d 1002 (Ohio Ct. App. 2003) .............................................................................. 16

*Lorillard Tobacco Company v. Amoco & Food Shop 5, Inc.*, 360 F. Supp.2d 882 (N.D. Ill. 2005) ......................................................................................... 11

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026 (2nd Cir., 1989) ....... 15

*Microsoft Corp. v. CMOS Tech.*, 872 F. Supp. 1329 (D. N.J. 1994) ............................ 10

*Mister Twister, Inc. v. Jenem Corp.*, 710 F. Supp. 202 (S.D. Ohio 1989) .................... 16

*Monday v. U.S.*, 421 F.2d 1210 (7th Cir. 1970) ...................................................... 17

*Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ......................................... 15

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986) ...................... 19

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455 (4th Cir. 1996), *cert. denied*, 519 U.S. 976 (1996) ................................................................................................ 11

*Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2nd Cir., 2009) .............. 15

*Thomsen v. U.S.*, 887 F.2d 12 (1st Cir. 1989) .......................................................... 17

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ......................................... 6

*Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071 (S.D.N.Y. 1979) ........................ 20

*Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988) ........................................ 9, 11

*Yonoco's Restaurant, Inc. v. Yonoco,* 100 Ohio App. 3d 11, 651 N.E.2d 1347 (Ohio Ct. App. 1994) ................................................................................................ 16

**Statutes**

15 U.S.C. § 1114 ...................................................................................... i, ii, 1, 6

15 U.S.C. § 1116 ............................................................................................ 19

15 U.S.C. § 1117 ............................................................................................ 17

15 U.S.C. § 1125 ............................................................................... i, 1, 12, 13, 16

**Other Authorities**

Callman, *Unfair Competition, Trademarks & Monopolies,* § 20.43 (4th Ed. 1983) ..................... 8

# I.  <u>INTRODUCTION</u>

The sale of counterfeit products is an enormous problem for manufacturers in the United States. Recognizing the seriousness of the problem and in order to stop the sale of non-genuine products, specifically by retailers that sell directly to the public, Congress created statutes permitting civil actions to recover damages from retailers who sell and/or offer to sell non-genuine products which include another's registered trademarks.[1]  Under the applicable federal and state statutes, as well as common law, a retailer that sells or offers for sale counterfeit products containing registered trademarks is strictly liable and if the conduct is deemed willful (which is not the same as intentional or with actual knowledge of counterfeit), the statutory penalties are enhanced.

The facts in this case underscore the problem and the need for enforcement of the laws that prohibit the sale of counterfeit products, and hold those who sell counterfeit accountable for their actions.  Here, Defendant admittedly purchased  NEWPORT® cigarettes, not by following its routine business practices of purchasing from legitimate wholesalers at typical prices, but instead, making cash purchases of cigarettes at discounted prices from an individual who walked in off the street.  Defendant's excuse that it did not ***know*** the NEWPORT® cigarettes were counterfeit are unconvincing and legally irrelevant since intent to infringe is not required to establish liability, and further, willful infringement can be established by circumstantial evidence demonstrating the Defendant turned a blind eye to the clear indications that the product it purchased was counterfeit.

---

[1] The applicable statutes include the Trademark Act of 1946, 15 U.S.C. § 1114(1) the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); dilution in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(c); trademark infringement and unfair competition in violation of the common law of the state of Ohio; and violations of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.*

Accordingly, with this Motion, Lorillard seeks summary judgment as to liability and damages and also requests the Court enter a permanent injunction.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties

Lorillard manufactures and sells premium cigarettes in the United States.  Lorillard's leading brand, NEWPORT®, is the best selling menthol brand in the United States and the second best selling cigarette brand overall. (*See* **Exhibit 1**, Declaration of Victor Lindsley at ¶ 3). Lorillard's cigarettes are manufactured in North Carolina in accordance with strict quality control standards.   The cigarettes are then distributed throughout the country by a network of wholesalers and retailers, in compliance with a wide range of federal and state regulations.

In the past several years, the federal government and many states, including Ohio, have substantially increased taxes on cigarettes and other tobacco products.  While the taxes are used to support many worthwhile programs,[2] the high level of taxation has significantly raised the retail cost of cigarettes and fueled a black market for cheaper cigarettes.

At the time the litigation was brought, Defendant operated two retail stores.[3]  The first, Downtown Check Cashing, is located at 1300 West Tuscarawas Street, Canton, Ohio 44702. The second, My Market, is located at 125 12th Street NE, Canton, Ohio 44704.  Defendant sold NEWPORT® brand cigarettes at both locations, which immediately prior to this litigation were one of its most popular menthol cigarette brand. (*See* **Exhibit 2**, Deposition of Mohammed Michael Hamden at 57-59).

---

[2] The revenue from these taxes has been directed to various smoking cessation programs, children's health initiatives, and other such purposes.

[3] Since the litigation was filed, Defendant claims it no longer operates My Market.  (*See* **Exhibit 2**, at 16-17).

### B.      Lorillard's Registered Trademarks

Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956.  Lorillard incorporates its trademarks onto its cigarettes and the packaging to identify the source of the products.  Among other marks, Lorillard and its affiliated entities hold federal registrations for the marks NEWPORT® (stylized) (Reg. No. 2,600,870), Spinnaker Design® (Reg. No. 1,178,413), Design Only® (Reg. No. 3,618,542), LORILLARD® (Reg. No. 1,920,066), Lorillard® (stylized) (Reg. No. 0,707,998), Newport Box with Striations® (Reg. No. 3,759,763), Newport Menthol Box® (Reg. No. 3,601,464), and NEWPORT® (Reg. No. 1,108,876) (the "Lorillard Marks") with the United States Patent and Trademark Office. (*See* **Exhibit 1**, Declaration of Lindsley and its Exhibits A-H, Certificates of Registration).   Lorillard has committed substantial time, money, and creativity to develop the consumer awareness and goodwill associated with these trademarks.  *Id*. at ¶ 5.  All eight of these Lorillard Marks are found on ***each*** individual pack of counterfeit cigarettes found in Defendant's stores.

### C.      The Discovery Of Counterfeit NEWPORT® Cigarettes At Defendant's Stores And The Instant Lawsuit

On August 13, 2010, Lisa Williams, a Lorillard Sales Representative, visited My Market and observed approximately two cartons and sixteen packages of what she suspected to be counterfeit NEWPORT® brand cigarettes located within My Market's inventory of cigarettes. (*See* **Exhibit 3**, Declaration of Lisa Williams at ¶ 4).  Williams took possession of two cartons and six packages of the suspected counterfeit cigarettes, and sent them overnight via Federal Express to Edward O'Brien, Manager, Sales Planning, for further inspection.  *Id*.

On or about August 16, 2010, Lisa Williams visited Downtown Check Cashing and observed approximately twenty packages of what she suspected to be counterfeit NEWPORT® brand cigarettes located within Downtown Check Cashing's inventory of cigarettes.  *Id*. at ¶ 5.

3

Williams took possession of five packages of suspected counterfeit cigarettes, and sent them overnight via Federal Express to Edward O'Brien for further inspection. *Id.*

Mr. O'Brien has specialized knowledge and experience in recognizing the difference between authentic and counterfeit Lorillard products. (*See* **Exhibit 4**, Declaration of O'Brien at ¶ 2). O'Brien inspected the cigarettes provided to him by Williams, which originated from My Market and Downtown Check Cashing. *Id.* at ¶¶ 3-4. Through his investigation, O'Brien was able to determine that the cigarettes removed from My Market and Downtown Check Cashing's inventory were counterfeit. *Id.* at ¶¶ 5-12. O'Brien bases his conclusion on three factors.

First, O'Brien cites to the differences in the package printing between the authentic NEWPORT® cigarettes and those cigarettes being offered for sale by My Market and Downtown Check Cashing. *Id.* at ¶¶ 6-7. The clarity of the printing on genuine packages of NEWPORT® brand cigarettes is not as sharp as that found on a counterfeit packages of cigarettes obtained from My Market and Downtown Check Cashing. *Id.* Second, the overhanging cellophane tear tape on authentic NEWPORT® cigarettes has no elasticity, while the cigarettes obtained from My Market and Downtown Check Cashing have tear tapes that will stretch to nearly twice their original length. *Id.* at ¶¶ 8-9. Third, the cigarettes found at My Market and Downtown Check Cashing have an out of date product code. *Id.* at ¶¶ 10-11. With regard to cigarettes obtained from My Market and Downtown Check Cashing, the product code appearing on the bottom of the pack was "0C07N114" and the time stamp was "19:09." *Id.* at ¶ 11. This code is out of date with regard to genuine NEWPORT® product, and is indicative of a counterfeit. *Id.*

Upon confirming that the cigarettes removed from Defendant's inventory were counterfeit, Lorillard contacted the Ohio Department of Taxation ("ODT"). Shortly thereafter,

the ODT conducted a seizure at My Market and Downtown Check Cashing.  After the ODT went to My Market and removed packages of NEWPORT® Box 100 cigarettes from its inventory, an employee called Defendant's owner, who was at Downtown Check Cashing, and informed him of what happened.  (*See* **Exhibit 2** at 125-126).  Defendant's owner then packed all the NEWPORT® Box 100 cigarettes he had at Downtown Check Cashing into his truck and left.  *Id.* at 127.  Defendant's owner drove approximately two blocks before being stopped by the authorities, was arrested, and ultimately charged with several crimes, including tampering with evidence and trafficking in counterfeit cigarettes.[4]  *Id.* at 127-131.  In total, the ODT obtained an additional 222 packages of counterfeit product from Defendant's stores.  Based on these facts, Lorillard instituted this action.

### III.     LEGAL ARGUMENT

#### A.     Standard Of Review

A court must grant a party's motion for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Klepper v. First M. Bank*, 916 F.2d 337, 341-342 (6th Cir. 1990), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, "[t]he moving party need not produce evidence showing the absence of a genuine issue of material fact: rather, the burden on the moving party may be discharged by 'showing' -- that is, point out to the district court -- that there is ***an absence of evidence*** to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325 (emphasis added) (internal quotations omitted).

Once the burden shifts, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *See*, *Klepper* 916 F.2d at 341-342 (citing *Celotex Corp.*, 477 U.S. at 322).

---

[4] Defendant's owner later pled guilty to two misdemeanors.  (*See* **Exhibit 2** at 131-132).

A mere scintilla of evidence is insufficient to meet this burden; rather, "there must be evidence on which the jury could reasonably find" for the non-moving party.  *Id.* (citing  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Summary judgment is appropriate "against a party who fails to make a showing essential to that party's case and on which that party will bear the burden of proof."  *Celotex Corp.*, 477 U.S. at 322.

**B.  Summary Judgment Is Appropriate As To Lorillard's Counterfeiting And Infringement Of Federally Registered Trademarks Claim Under 15 U.S.C. § 1114(1)**

The Lanham Act applies to federally registered trademarks and imposes liability upon any person who shall, without the consent of the registrant:

> [u]se in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

A violation of this section is established by proving  (1) ownership and continuous use of a specific trademark; (2) secondary meaning if the mark is descriptive;[5] and (3) a likelihood of confusion among customers resulting from a defendant's use of the mark.  *Homeowners Group, Inc. v. Home Marketing Specialists*, 931 F.2d 1100, 1105 (6th Cir. 1991).

Moreover, a plaintiff is **not** required to prove intent to infringe to prove a defendant's liability.  *Amouri's Grand Foods*, *supra*, 453 F.3d at 381; *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 287 (6th Cir. 1997).   Rather, **"[s]ellers bear strict liability for violations of the Lanham Act" and neither a retailer's ignorance nor its**

---

[5]  The secondary meaning factor does not apply here because Lorillard's marks are classified as fanciful or arbitrary, and not descriptive.  Marks that are merely descriptive or generic are not entitled to trademark protection and therefore, are not entitled to federal registration.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  As indicated above, the Lorillard marks are all registered with the United States Patent and Trademark Office. (*See* Exhibit 1).

**"role as a retailer rather than producer of the counterfeit goods" can excuse a retailer from liability.** *Amouri's Grand Foods*, *supra*, 453 F.3d at 381 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir. 1992)) (emphasis added).

Here, each of the relevant factors has been satisfied.  Summary judgment is therefore be appropriately granted.

> **1.  Lorillard is the Owner of Protectable Trademarks**

Ownership and continuous use of a specific trademark, without anything further, establishes protectable trademark rights under the common law.  *Homeowners Group*, *supra* at 1105.  Lorillard's trademarks at issue have been registered with the United States Patent and Trademark Office. (*See* **Exhibit 1**, Declaration of Victor Lindsley at ¶ 4.)  In addition, Lorillard and its predecessors have used these trademarks since at least 1956. *Id.* at ¶ 3.  Accordingly, there is no evidence that disputes ownership and continuous use of the trademarks at issue.

> **2.  Defendant's Use of Lorillard's Trademarks is Likely to Cause Confusion Concerning the Origin of the Goods**

The Sixth Circuit looks at eight factors when determining the likelihood of consumer confusion in a trademark infringement case.  *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 462, 468 (6th Cir. 1982).  These factors must be considered together and analysis is not mathematical; rather the ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 275.  In analyzing these factors, there is no doubt that consumers are likely to be confused by Defendant's offering of counterfeit products; specifically, consumers would believe that the products offered for sale by Defendant, which are virtually

7

identical in appearance, are somehow affiliated with Lorillard and its protected marks, when in fact they are not. (*See* **Exhibit 5**, Photos of Genuine Product; **Exhibit 6**, Photos of Counterfeit Product). In fact, in a substantially similar case with an identical analysis of these factors, the 6th Circuit found: "As Lorillard's cogent analysis of those factors demonstrates persuasively (and as might be expected in any counterfeiting case -- especially where the counterfeiting is skillful), here there is a certainty of 'confusion among consumers regarding the origin' of the cigarette packages offered for sale…." *Amouri's Grand Foods, supra* at 381.

### a) Lorillard's Trademarks are Strong

"A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of a wide and intensive advertisement, or because of a combination of both." Callman, *Unfair Competition, Trademarks & Monopolies,* § 20.43 (4th Ed. 1983); *see also*, *Homeowner's Group*, *supra* at 1107 (the strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace).

Lorillard's trademarks are extremely strong.  NEWPORT® is a well known mark used continuously since the 1950's and has been developed into the most popular brand of menthol cigarettes in the United States. (*See* **Exhibit 1**, Declaration of Lindsley at ¶ 3).  Lorillard has deliberately strengthened its trademarks by advertising and marketing; investing substantial time, money, and creativity to develop the consumer awareness and goodwill associated with its trademarks.  In sum, Lorillard has gone to great lengths to develop highly distinctive marks and strengthen those trademarks to ensure that its product is recognized by consumers in the marketplace.

8

**b)** **The Non-Genuine Cigarettes Appear Identical to Genuine Newport®**

Relatedness is the most important inquiry in the likelihood of confusion inquiry. *Homeowner's Group*, *supra* at 1109.  Here, the types of goods in question are not only related, but identical.  Both Lorillard and Defendant used the trademarks on **cigarettes**:  Lorillard on legitimate and authentic products and Defendant on illegitimate and illegal products.  The fact that the trademarks are used on illegitimate products that are identical to the genuine product clearly will create consumer confusion as to the origin of the product.

**c)** **The Trademarks Used on the Counterfeit and Genuine Products are Similar**

In evaluating the similarity of trademarks, a superficial side-by-side comparison is not the appropriate test.  *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). Rather, "the marks must be viewed in their entirety and in context." *Homeowners Group*, *supra* at 1109. "A court must determine, in the light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented." *Id.* (citations omitted).

In this case, Defendant is using eight marks **identical** to the registered marks owned by Lorillard.  As a result, there can be no question but that the counterfeit marks are similar in appearance, and would be confusing to the public when presented on identical types of product offered for sale to the public.  (*See* **Exhibit 5**, Photos of Genuine Product; **Exhibit 6**, Photos of Counterfeit Product.)

**d)** **Actual Confusion Is Not Required, But Rather Likelihood of Confusion**

The absence of evidence of actual confusion is not dispositive. *See*, *Kraft General Foods, Inc. v. Allied Old English*, 831 F. Supp. 123, 130 (S.D.N.Y. 1993). A successful Lanham Act plaintiff need only show a sufficient potential of confusion, not actual confusion. *Daddy's Junky*

9

*Music Stores, supra* at 284.  Confusion is most likely where, as here, the defendant uses a counterfeit mark.  *See*, *Microsoft Corp. v. CMOS Tech.*, 872 F. Supp. 1329, 1335 (D. N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.  Under these circumstances, the likelihood of consumer confusion, mistake or deception is clear"). Here, in light of the relatedness of the product, the similarity to the legitimate product and trademarks, and the side-by-side marketing of the product, there is a high likelihood of consumer confusion.

### e)      The Marketing Channels are Similar

Both Lorillard and Defendant ultimately sell their cigarettes to consumers in the United States.  Indeed, Defendant had legitimate cigarettes alongside the counterfeit cigarettes in each store. (*See* **Exhibit 3**, Declaration of Williams at ¶¶ 4-5). Thus, the marketing channels in the Defendant's store were identical and clearly create the atmosphere for consumer confusion.

### f)      The   Degree   of   Care   Utilized   by Consumers

Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is based upon the typical buyer exercising ordinary caution. *Homeowners Group, Inc.*, *supra* at 1111.  "However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases." *Id*.

Under these standards, the degree of care utilized by cigarette buyers is low.  The typical buyer of cigarettes is neither sophisticated nor has particular expertise in cigarettes.  To the contrary, the typical buyer of cigarettes simply purchases the product offered and assumes it to

be authentic, since based upon the appearance and channel of distribution, there is no reason to assume otherwise.  The consumer assumes he is receiving authentic product because that is what is represented by the seller when he has counterfeit products alongside genuine products with no distinction between them.[6]

### g)  Defendant's Intent in Adopting the Marks

If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an interference of confusing similarity.  *Wynn Oil Co*, *supra* at 1189.  *See also*, *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466 (4th Cir. 1996), *cert. denied*, 519 U.S. 976 (1996) ("We presume that the person who sets out to infringe on another's trademarks has more brains than scruples, and will likely succeed").  There are innumerable designs and trademarks which could be used on cigarettes to identify their source or to create a brand identity.  There is no reason for Defendant to sell cigarettes bearing counterfeit Lorillard trademarks other than a desire to exploit those marks and suggest an association or affiliation between Lorillard and the counterfeit products.

### h)  Likelihood of Expanding the Product Lines

This factor is relevant where the goods and services of the parties are not identical but where they are somewhat related.  *See*, *Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419, 422 (6th Cir. 1999).  Here both parties already occupy the same field of cigarette sales.  Therefore, this factor is irrelevant.

---

[6] "The purchase of an individual pack of cigarettes in a convenience store [w]ould rarely be accompanied by the degree of care necessary to identify the counterfeit product."  *Lorillard Tobacco Company v. Amoco & Food Shop 5, Inc.*, 360 F. Supp.2d 882, 886 (N.D. Ill. 2005).

### i)     Analysis of the Applicable Factors Prove a Likelihood of Consumer Confusion

The undisputed evidence proves that Defendant has offered and distributed purported NEWPORT® brand cigarettes which bear imitations of Lorillard's protected trademarks.  In doing so, Defendant has directly competed with Lorillard by selling and offering for sale cigarettes in packages bearing counterfeit Lorillard marks instead of authentic NEWPORT® marks.  Defendant's sale and offering for sale of counterfeit NEWPORT® cigarettes is clearly likely to cause consumer confusion.

As Lorillard has shown both its ownership and continuous use of a specific trademark and a likelihood of confusion among customers resulting from a defendant's use of the mark, Defendant is liable to Lorillard for infringement of its federally registered trademarks.

### C.     Summary Judgment Is Appropriate As To Lorillard's Unfair Competition, False Designations, Descriptions And Representations Claim Under 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act applies to both registered and unregistered trademarks and imposes liability upon any person under the following circumstances:

> (1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a).  To establish a claim for false designation of origin, a plaintiff must demonstrate that (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).  In order to demonstrate that the false designation has a substantial

12

economic effect on interstate commerce, all Lorillard has to establish is that Defendant's false designation hinders Lorillard's ability to conduct its interstate business.  *Id.*

Here, Lorillard is the owner of federally registered trademarks. (*See* **Exhibit 1**, Declaration of Lindsley at ¶ 4 and its Exhibits A-H, Certificates of Registration).  Defendant's use of counterfeit Lorillard marks has a substantial economic effect on interstate commerce because Defendant is directly competing with Lorillard by selling and/or offering for sale cigarettes purporting to be authentic NEWPORT® brand cigarettes, when they are not. (*See* **Exhibit 4**, Declaration of O'Brien at ¶¶ 14-15).  Moreover, as previously discussed, Defendant's false designation creates a likelihood of confusion.  As such, there is no genuine issue of material fact that Defendant is liable for false designation of origin and false and misleading descriptions and representations under 15 U.S.C. § 1125 (a).

### D.  Summary Judgment Is Appropriate As To Lorillard's Dilution Claim Under 15 U.S.C. § 1125 (c)

Section 43(c) of the Lanham Act prohibits the "dilution" of famous marks, regardless of the presence or absence of actual or likely confusion, regardless of whether there is a competition between the senior and junior user's marks, and regardless of actual economic injury.  15 U.S.C. § 1125(c).  Under this Section:

> … Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

*Id.*  Congress has identified and defined two forms of "dilution":

> (B) . . . "dilution by blurring" is an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause

dilution by blurring, the court may consider all relevant factors, including the following:

> (i)  The degree of similarity between the mark or trade name and the famous mark;
> (ii)  The degree of inherent or acquired distinctiveness of the famous mark;
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;
> (iv) The degree of recognition of the famous mark;
> (v) Whether the user of the mark or trade name intended to create an association with the famous mark; and
> (vi) Any actual association between the mark or trade name and the famous mark.

(C)  . . . "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

15 U.S.C. §1125 (c)(2)(B) and (C).

Thus, in order to establish a federal dilution claim, a plaintiff has the burden of proving: (1) it owns a famous mark; (2) the defendant is making use of the mark in commerce; (3) the defendant began using its mark after the plaintiff's mark became famous; and (4) the defendant's use is likely to cause dilution by tarnishment or dilution by blurring.

Here, Lorillard indisputably owns a famous mark for its NEWPORT® brand cigarettes. NEWPORT® is a well known mark used continuously since the 1950's and has been developed into the most popular brand of menthol cigarettes in the United States. (*See* **Exhibit 1**, Declaration of Lindsley at ¶ 3).  Defendant clearly began making commercial use of the mark in commerce by selling and/or offering to sell counterfeit NEWPORT® brand cigarettes.  Further, such use was done well after Lorillard's marks became famous because counterfeit NEWPORT® brand cigarettes were found on Defendant's premises twice during August of 2010.  (*See* **Exhibit 3**, Declaration of Williams at ¶ 4; **Exhibit 2**, Deposition of Hamden at 125-131).

14

Finally, Lorillard can establish both dilution by blurring and dilution by tarnishment. "The primary concern in blurriness actions is preventing the 'whittling away of an established trademark's selling power through its unauthorized use by others.'" *Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2nd Cir., 2009) *citing Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031 (2nd Cir., 1989).  It is indisputable that Defendant is using marks **identical** to the famous marks owned by Lorillard;  thus, there can be no doubt the factors demonstrating dilution by blurriness between the marks weigh in favor of Lorillard.  *See*, *Audi AG v. D'Amato*, 381 F. Supp.2d 644, 665 (E.D. Mich. 2005)( holding that "because the identical marks were used on similar goods," direct evidence of actual dilution will not be necessary and dilution was established).[7]

Similarly, a "trademark may be tarnished when it is linked to products of shoddy quality..." because the reputation of the mark may be harmed.  *Starbucks Corp.*, 588 F.3d at 110. Lorillard has received reports from consumers and retailers alike of consumers returning NEWPORT® cigarettes complaining of bad taste, only to find out that the cigarettes in question were counterfeit.  (*See* **Exhibit 4**, Declaration of O'Brien at ¶ 13).  Defendant's use of Lorillard's identical marks on products that do not meet Lorillard's rigorous manufacturing and

---

[7] Although *Audi AG* was decided prior to the Trademark Dilution Revision Act of 2005 ("TDRA"), the court's holding with respect to identical marks should remained unchanged, and is still applicable here.  The TDRA was Congress's response to the Supreme Court's decision in *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003), which  held that the prior statute required a showing of "actual dilution."   "The TDRA amended the Federal Trademark Dilution Act to provide, *inter alia*, that the owner of a famous, distinctive mark is entitled to an injunction against the use of a mark that is 'likely' to cause dilution of the famous mark." *Starbucks Corp.*, 588 F.3d at 104.  Because the TDRA now requires the lesser standard of "likely" dilution, and *Audi AG* held that an identical mark was sufficient to show "actual dilution," Lorillard's demonstration that Defendant used identical marks requires the conclusion Lorillard has established a dilution claim.

quality controls have tarnished the reputation of the Lorillard Marks.  Therefore, Defendant is liable to Lorillard for dilution of Lorillard's marks under 15 U.S.C. § 1125(c).

### E.    Summary Judgment Is Appropriate As To Lorillard's State Law Claims

Under Ohio law, unfair competition "ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are those of another." *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 490-491, 2003 Ohio 5077, 797 N.E.2d 1002, 1017 (Ohio Ct. App. 2003).  Similarly, the Ohio Deceptive Trade Practices Act ("ODTPA") is violated when a person or entity:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; [or]

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services.

O.R.C. § 4165.02(A).

It has been held that the applicable standard under Ohio common law for trademark infringement, unfair competition, and the ODTPA "mirror the … federal claim of trademark infringement by also requiring proof of likelihood of confusion."  *Daddy's Junky Music Stores*, 109 F.3d at 288; *see also Mister Twister, Inc. v. Jenem Corp.,* 710 F. Supp. 202, 204 (S.D. Ohio 1989)(Ohio common-law trademark infringement and DTPA claims, like federal trademark infringement and false designation claims, require proof of likelihood of confusion)*; Yonoco's Restaurant, Inc. v. Yonoco,* 100 Ohio App. 3d 11, 651 N.E.2d 1347, 1350 (Ohio Ct. App. 1994) (DTPA is substantially similar to 15 U.S.C. § 1125(a)).  Here, and as set forth above, Lorillard has established that confusion is likely with regard to Defendant's use of Lorillard's protected

16

marks.  Therefore, it is indisputable that Defendant is liable to Lorillard under these state law theories of recovery.

**F.    Defendant's Sale And/Or Offering For Sale Of Counterfeit NEWPORT® Brand Cigarettes Was Done Willfully  Or With A Reckless Disregard for Lorillard's Protected Marks, Thereby Subjecting Defendant to Increased Damages**

Defendant's business dealings and other circumstances evidence that Defendant acted willfully or, at a minimum, with a reckless disregard of Lorillard's trademarks.  If a defendant violates the relevant provisions of the Lanham Act willfully or with a reckless disregard for a plaintiff's protected trademarks, the upper range for statutory damages is increased from $200,000 to $2,000,000 per counterfeit mark.  15 U.S.C. § 1117(c).

"[I]n the civil context, 'willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.' " *Thomsen v. U.S.*, 887 F.2d 12, 17 (1st Cir. 1989), quoting *Monday v. U.S.*, 421 F.2d 1210, 1215 (7th Cir. 1970). Moreover, intent to infringe can be shown by circumstantial evidence.  *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir. 1996) (internal quotations and citations omitted).  Here, there is no genuine issue of material fact that Defendant's sale and/or offering for sale of counterfeit NEWPORT® brand cigarettes was done either intentionally or with a reckless disregard for Lorillard's protected marks.

Defendant's own admissions establish that it acted intentionally or at the very least, recklessly, with regard to the source of NEWPORT® cigarettes it sold and offered for sale:

- Contrary to his usual purchasing history, Defendant's owner testified that he purchased purported NEWPORT® cigarettes from an individual that he did not know very well who came into the store selling cigarettes out of his car.  (*See* **Exhibit 2**, Hamden Deposition at 69-79).

17

- Defendant's owner testified that he purchased 50 cartons of NEWPORT® Box 100's (the type of cigarette discovered at Defendant and confirmed to be counterfeit) for $48.00 per carton in cash - at a significant discount per carton than what Defendant paid at its legitimate supplier at that time ($58.40) and for which he typically paid by check. (*Id.* at 69; 76-77; 105; **Exhibit 7**, Lorillard's Newport Buy Down Promotion Agreement).

- Defendant's owner testified that he was aware that he was only supposed to purchase NEWPORT® brand cigarettes from a legitimate wholesaler and that he knew that this individual was not a wholesaler. *Id.* at 78-79.

- Defendant's owner admitted that after purchasing the 50 cartons, he put them in his inventory at both Downtown Check Cashing and My Market and sold them to customers at regular price. *Id.* at 85.[8]

Further, Defendant's claims that it did not even know that counterfeit cigarettes existed in the marketplace prior to this lawsuit (*Id.* at 123) are of no consequence:

- Lorillard specifically warns retailers about the existence of counterfeit product in the marketplace and the retailer agrees as part of its contract with Lorillard: "[n]ot to participate in the purchase, sale or distribution of any cigarettes bearing a Lorillard brand name or trademark not manufactured by Lorillard (counterfeit or gray market goods). . ." (*See* **Exhibit 7** at ¶ F).

---

[8] Defendant's purchase history and Defendant's owner's testimony underscores Defendant's failure to purchase NEWPORT® brand cigarettes from legitimate wholesalers immediately prior to when counterfeit product was found in Defendant's inventory. Specifically, after purchasing NEWPORT® brand cigarettes every week, Defendant went approximately 10-11 weeks without purchasing NEWPORT® brand cigarettes from its typical supplier. (*See* **Exhibit 2** at 133-146; **Exhibit 8**, Excel Retail Shipments Spreadsheet for Defendant's stores). Indeed, Defendant returned NEWPORT® brand cigarettes to its typical supplier during that period. *Id.*

18

Thus, the fact that Defendant was provided with specific warnings of the existence of counterfeit cigarettes in the market, and still choose to purchase from an individual off the street at a significantly lower price than legitimate sources indicates that Defendant willfully purchased and sold counterfeit cigarettes or, at the very least, acted with reckless disregard for the authenticity or source of cigarettes it was selling and/or offering to sell in its store.

Consequently, because Lorillard has demonstrated that Defendant's actions in connection with this matter were intentional or, at the very least, reckless, a ruling that Defendant acted willfully and that Lorillard will be entitled to recoup up to $2,000,000 per infringement on each of its trademarks as well as its actual costs and attorney fees incurred in litigating this matter is appropriate.

While the amount of damages is within the Court's discretion, Lorillard requests that because Defendant admittedly purchased a large quantity of cigarettes from a non-reputable source, despite specific warnings from Lorillard of the existence of counterfeit cigarettes and Defendant's agreement to not deal in counterfeit products, the Court enter a finding of willfulness and an award in the amount of $1,600,000.  This amount of damages is significantly below the maximum of $16,000,000 permissible for willful infringement, and in fact, still within the range of statutory damages allowed for non-willful infringement of Lorillard's eight trademarks.  Lorillard also requests an award of its actual costs and attorney fees incurred in litigating this matter.

The Court also should issue a permanent injunction pursuant to the Lanham Act, 15 U.S.C. § 1116, to prevent any future violation of Lorillard's trademarks.  In *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986), when reversing the district court's denial of a permanent injunction against the retailer of shirts with the "Polo" logo not manufactured by

Polo, the court found that plaintiff need not introduce evidence of a threat of future harm since defendants had willfully violated Polo's trademark rights.  *Id*. at 1135.  "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark."  *Id*. at 1135-36; s*ee also Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071, 1077 (S.D.N.Y. 1979) ("mere possibility" of infringement is found "sufficient to warrant [a permanent] injunction" (citation omitted)), *aff'd without opinion*, 622 F.2d 577 (2d Cir. 1980).  A permanent injunction restraining further infringements of Lorillard's trademarks should, therefore, be issued.

## IV.    CONCLUSION

Based on the foregoing, Lorillard is entitled to summary judgment as to all the claims set forth in its Complaint.  Moreover, Lorillard is entitled to an award of damages on its claims due to Defendant's willfulness with regard to its sale and/or offering for sale of counterfeit NEWPORT® brand cigarettes and that a permanent injunction should issue against Defendant to prevent any future violations.

Respectfully submitted,

By: /s/ Kelley M. Haladyna_____
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500
khaladyna@dickinsonwright.com
MI Attorney Bar No. P63337
Admitted Pro Hac Vice

Dated:  May 25, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2011 I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system.

_____/s/ Kelley M. Haladyna_____
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
khaladyna@dickinsonwright.com
MI Attorney Bar No. P63337
Admitted Pro Hac Vice

DETROIT 28617-17 1203374v1