UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORILLARD TOBACCO COMPANY, | ) | CASE NO. 5:10CV1886 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER AND DECISION** |
| HAMDEN, INC. d/b/a | ) | |
| DOWNTOWN CHECK CASHING | ) | |
| and MY MARKET, | ) | |
| | ) | |
| Defendant. | | |

This matter is before the Court on Plaintiff Lorillard Tobacco Company's Motion for Summary Judgment. Doc. 32. The Court has reviewed the motions, responses, pleadings, and applicable law. For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED. There is evidence before the court sufficient to award damages. However, the Court will entertain oral argument from both parties on the appropriate amount of damages. The final pretrial will be converted into an oral argument on this issue on November 7, 2011 at 1:30 p.m. No evidence outside of that which is included in the motions will be entertained.

**I. FACTS AND PROCEDURAL HISTORY**

The facts that gave rise to the complaint are largely undisputed. Lorillard manufactures and sells various brands of cigarettes. Doc. 32 at 3. One of Lorillard's most popular brands is "Newport." *Id.* For its Newport brand, Lorillard has a number of registered federal trademarks, including NEWPORT, NEWPORT (stylized), Spinnaker Design, Design Only, LORILLARD, Lorillard (stylized), Newport Box with Striations, and Newport Menthol Box. *Id.* Lorillard has committed substantial resources to promoting and marketing the Newport brand. *Id.* Michael

1

Hamden is the principle of Hamden, Inc. ("Hamden"). Doc. 33 at 2. In 2010, Hamden operated two convenience stores that sold, among other things, the Newport brand of Lorillard cigarettes. Doc. 32 at 2.

Lisa Williams is a sales representative for Lorillard responsible for calling on stores, including My Market and Downtown Check Cashing. Doc. 32-4 at 2. On August 13, 2010, while calling on My Market, Ms. Williams observed approximately two cartons and sixteen packages of Newport cigarettes she believed were counterfeit. *Id.* Ms. Williams sent the suspected cigarettes to Lorillard's corporate headquarters for further inspection. *Id.* On August 16, 2010, while calling on Downtown Check Cashing, Ms. Williams observed approximately twenty additional packages she believed were counterfeit. *Id.* Ms. Williams again sent the suspected cigarettes to Lorillard's corporate headquarters for further inspection. *Id.* Lorillard's Manager for Sales Planning, Edward O'Brien, received both sets of cigarettes. Doc. 32 at 4. Mr. O'Brien confirmed the cigarettes were counterfeit based upon the clarity of the printing on the packages, the lack of elasticity in the tear tape, and the presence of out-of-date product codes. *Id.* O'Brien indicated the printing on the authentic cigarettes is typically not as sharp as that found on the counterfeit packages. *Id.* Additionally, unlike the counterfeit cigarettes, the authentic cigarettes have a tear tape with no elasticity. *Id.* Finally, the presence of out-of-date product codes is indicative of counterfeit cigarettes. *Id.*

Lorillard contacted the Ohio Department of Transportation. Doc. 32 at 5. The ODT conducted a seizure and ultimately retrieved an additional 222 packages of counterfeit cigarettes from My Market and Downtown Check Cashing. *Id.*

On August 25, 2010, Lorillard filed this action. Doc. 1. The first count of Lorillard's complaint alleges trademark counterfeiting and infringement; the second count alleges federal

2

unfair competition and false designation of origin and false and misleading misrepresentations; the third count alleges trademark dilution; the fourth count alleges trademark infringement and unfair competition under common law; and the fifth count alleges a violation of the Ohio Deceptive Trade Practices Act. *Id.*

On May 25, 2011, Lorillard moved for summary judgment on all its claims. Doc. 32.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper if the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Id.* at 252. The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving

party to show that there is some metaphysical doubt as to the material facts. *Harrow Products, Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> …
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it[.]

Hence, a ruling at summary judgment determines whether a trial is necessary and summary judgment is, therefore, appropriately granted when there are no genuine issues of fact. *Anderson*, 477 U.S. at 250.

**B. Trademark Counterfeiting & Infringement**

The Lanham Act protects trademark owners from counterfeit uses of trademarks in commerce that are *likely to cause confusion*, mistake, or deception. 15 U.S.C. § 1114(1) (emphasis added). The Sixth Circuit has held that when determining whether the use of a mark is likely to cause confusion eight factors should be weighed: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) any evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Frisch's Restaurant v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir. 1982). A plaintiff need not establish each factor to prevail. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988).

**(1) Strength of the Plaintiff's Mark.**

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct the mark, the more likely it is that use of the mark will result in confusion." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). Once the mark has been registered there is a "rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th Cir. 2007).

In this case, Plaintiff's marks are strong. Importantly, Plaintiff's marks are registered. Additionally, the public readily accepts the marks as belonging to Lorillard. Plaintiff has gone to great lengths to market the NEWPORT brand and as a result has created highly distinctive marks. This factor weighs in Plaintiff's favor.

**(2) Relatedness of the Goods.**

Relatedness is considered "[t]he most important inquiry in the likelihood of confusion determination." *Conmerica Inc. v. Fifth Third Bankcorp*, 282 F.Supp.2d 557, 570 (2003). Infringement cases generally fit into one of three categories with regard to relatedness: (1) related and in direct competition; (2) related but not competitive; or (3) totally unrelated. *See Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1118 (6th Cir. 1996). Goods are related when "marketed and consumed such that buyers are likely to believe that the [goods], similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners Group v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1109 (6th Cir. 1991). Thus, the Court must determine whether the goods are so related "they are likely to be connected in the mind of a prospective purchaser." *Id.*

5

The cigarettes at issue had nearly identical marks, were commingled in the same inventory, were offered at identical costs, and targeted the same consumers. There can be no doubt that consumers would believe the goods all originated from Lorillard. In fact, Defendant has made no argument to the contrary. This factor, therefore, weighs heavily in Plaintiff's favor.

**(3) Similarity of the Marks.**

"When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." *Daddy's*, 109 F.3d at 283. According to the Sixth Circuit in *Wynn*, 839 F.2d at 1187-1188, the appropriate test of similarity is "whether the mark 'will be confusing to the public when singly presented.'" *Wynn*, 839 F.2d at 1187-1188 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983)). Hence, the important consideration in determining the similarity of the marks is whether they are "similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark." *Id*. at 1188.

Plaintiff's marks and the marks on the counterfeit cigarettes are virtually identical. There are only minor differences between the marks, such as the clarity of the printing and the elasticity of the tear tape. The extensive similarity between the marks on the authentic and counterfeit cigarettes is an additional factor that the Court weighs in Plaintiff's favor.

**(4) Evidence of Actual Confusion.**

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion. Due to the inherent difficulty in securing evidence of actual confusion, a lack of such evidence is rarely significant." *Daddy's*, 109 F.3d at 283. Isolated instances of confusion are insufficient for a finding of actual confusion. *Champions Golf Club Inc.*, 78 F.3d at 1119.

6

However, when a person experienced with a certain good is confused, it is more likely that a consumer will be confused. *Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006).

In this case, Plaintiff and Defendant agree there have been a few instances of past confusion. Carmine DiGiulio, an employee at ADCO (a local cigarette distributor), had an opportunity to examine the counterfeit cigarettes and did not know the cigarettes were counterfeit or not properly branded. Doc. 33 at 2. Additionally, an employee at Lorillard, Lisa Williams, had suspicions that the cigarettes were counterfeit. Doc. 32 at 3-4. However, Ms. Williams was unable to say definitively whether the cigarettes were counterfeit before sending them to another individual at Lorillard with specialized knowledge. *Id*. Given the similarity between the authentic and counterfeit cigarettes and the confusion experienced by individuals with specialized knowledge, it is more likely that consumers will be confused. The Court finds that this factor weighs in Plaintiff's favor.

**(5) Marketing Channels Used.**

Here, the Court must "[c]onsider the similarities or differences between the predominant customers of the parties' respective goods or services … a court must determine whether the marketing approaches employed by each party resemble each other." *Larco Brothers, Inc. v. Luca's Chophouse, LLC*, 621 F.Supp.2d 466, 473 (2008). This factor also requires the Court consider "how and to whom the respective goods or services of the parties are sold." *Homeowners Group*, 931 F.2d at 1110. In this case, the parties used the same means to market the cigarettes (the same stores) and their customers were identical. This factor also favors Plaintiff.

**(6) Likely Degree of Purchaser Care.**

7

The degree of purchaser care is similar to the standard of a typical buyer who exercises ordinary care. *Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F.Supp.2d 822, 829-830 (E.D. Mich. 2007).  Cigarette purchasers tend to have "a low degree of care" and do not have the expertise to identify the subtle differences between the authentic and counterfeit cigarettes.  *Id.*  The Court finds this factor also weighs in Plaintiff's favor.

**(7) Defendant's Intent in Selecting the Mark.**

A defendant's intent in selecting the mark may serve to "strengthen the likelihood of confusion," but proof of intent is not required.  *Champions Golf Club Inc.*, 78 F.3d at 1121.  "A finding that the infringement was not intentional . . . would have no significance for the ultimate inquire of the likelihood of confusion."  *Id.  See also*, *Wynn*, 839 F.2d at 1189.

The record contains no direct evidence that the Defendant intentionally used a counterfeit mark.  This factor does not weigh in either party's favor as its absence has no significance on the ultimate determination of likelihood of confusion.

**(8) Likelihood of Expansion of the Product Lines.**

The final factor, likelihood of expansion of the product lines, is relevant where the goods and services of the parties are not identical but where they are somewhat related.  *Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419, 422 (6th Cir. 1999).  Here, both the authentic and the counterfeit cigarettes occupy the same market.  Therefore, this factor is irrelevant.

**(9) Balancing the Factors.**

In balancing the above factors, the Court finds that a likelihood of consumer confusion exists. The inventories at My Market and Downtown Check Cashing contained both authentic and counterfeit cigarettes that were nearly identical.  The Defendant has failed to present any evidence to dispute the fact that consumers would be confused by the counterfeit cigarettes.

8

Because sellers bear strict liability for violations of the Lanham Act, even dealers who are ignorant that they are selling goods bearing an infringing mark are liable for trademark infringement. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006). Defendant's claims of ignorance as to the counterfeit cigarettes are, therefore, irrelevant to the issue of liability. The statute merely requires that the Defendant "used" the goods in commerce, which occurred when the cigarettes were offered for sale.

In reviewing the record and accepting the facts in a light most favorable to the Defendants, the Court finds that Plaintiff is entitled to a summary judgment on its trademark counterfeiting and infringement claim pursuant to 15 U.S.C. § 1114(1)(a).

**C. Unfair Competition, False Designation, Descriptions and Representations.**

Section 1125(a) of the Lanham Act imposes liability against:

> "[a]ny person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin … of his or her goods, services, or commercial activities."

15 U.S.C. § 1125(a)(1)(A).

A claim for false designation of origin must establish: (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Given that the factors relevant to likelihood of confusion under 15 U.S.C. § 1441(1)(a) are identical to those applied to false designation issues arising under 15 U.S.C. § 1125(a) the Court need not readdress that issue. *Id. See also Champions Golf Club, Inc.*, 78 F.3d at 1123. Therefore, the Court must only determine whether the "false designation had a substantial effect on interstate

9

commerce." *Id.* The Court finds that because the counterfeit cigarettes at issue in this case are in direct competition with Plaintiff's Newport brand, there is no reason to doubt that the counterfeit products have, and will continue to have, a significant impact on interstate commerce. Therefore, Plaintiff is entitled to summary judgment on its claim for false designation of origin.

**D. Trademark Dilution.**

The Lanham Act also prohibits unfair competition resulting from the dilution of famous marks. To prevail on a claim of dilution under 15 U.S.C. § 1125(c), a plaintiff must show: (1) the senior mark is famous; (2) the senior mark is distinctive; (3) the use of the junior mark qualifies as "commercial"; (4) the junior mark began after the senior mark became famous; and (5) the junior mark caused a dilution of the distinctive quality of the senior mark. *Audi*, 469 F.3d at 546. A plaintiff who shows a defendant used identical marks necessarily fulfills the fifth prong of the test. *Id.* at 547.

In this case, the parties do not dispute that Plaintiff's marks are famous and distinctive. Additionally, there is no dispute that the marks achieved their status prior to the date of the Defendant's purchase or sale of the counterfeit cigarettes. The Defendant used the counterfeit cigarettes in his inventory in commerce. Given that the Defendant was selling counterfeit cigarettes that bore marks nearly identical to the registered marks, the final element of the dilution analysis is necessarily established. Accordingly, Plaintiff is entitled to summary judgment on its dilution claim under 15 U.S.C. § 1125(c).

**E. State Law Claims.**

Plaintiff argues the standard for Ohio's law for unfair competition, infringement, and the Deceptive Trade Practices Act, is the same as used for federal trademark infringement and federal unfair competition. O.R.C. § 1329.65(A) provides:

> (A) Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a trademark or service mark registered under sections 1329.54 to 1329.67 of the Revised Code, in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services …

The Sixth Circuit has noted that the test for relief under Ohio common law for unfair competition, infringement, and violations of the Deceptive Trade Practices Act is identical to the test under the Lanham Act in requiring likelihood of confusion. *Daddy's*, 109 F.3d at 288; *Mister Twister, Inc. v. JenEm Corp.*, 710 F.Supp. 202, 204 (S.D. Ohio 1989).

Since Plaintiff has established that there is no genuine issue of a material fact relating to the question of the likelihood of consumer confusion, Plaintiff's request for the entry of summary judgment in connection with its state law claims must be, and is, granted.

**F. Willfulness of Defendant's Conduct and Statutory Damages.**

Title 15, Section 1117 allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative methods of recovery for trademark infringement: (1) the actual damages caused by the infringement, 15 U.S.C. § 1117(a); or (2) statutory damages. 15 U.S.C.§ 1117(c). "Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952). Statutory damages for trademark infringement are available up to $200,000 per counterfeit trademark infringed, regardless of willfulness, and enhanced up to $2,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117(c). The amount of statutory damages awarded to a plaintiff does not depend on actual damages because often the proof of actual damages within the infringers' control and is not disclosed. *Microsoft v. McGee*, 490 F.Supp.2d 874, 881 (2007).

In this case, Plaintiff asks the court to enter a finding of willfulness. However, the Court need not reach the issue of willfulness because Plaintiff is requesting a damage award that falls within the statutory range for non-willful conduct. Specifically, Plaintiff seeks damages of $200,000, the statutory maximum for non-willful conduct, for each of its eight marks. The Court finds that Plaintiff is entitled to damages. The parties shall have the opportunity to argue the proper amount of statutory damages at the hearing on November 7, 2011 at 1:30 p.m.

G.  **Permanent Injunction.**

Under the Lanham Act, a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 1840, 164 L.Ed.2d (2006). A plaintiff must demonstrate that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted;" and (4) it is in the public's interest to issue the injunction. *Audi*, 469 F.3d at 550.

As to the first factor, irreparable injury may be inferred "when there is a likelihood of confusion or possible risk to [the Plaintiff's] reputation." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 598, 608 (6th Cir. 1991). Because this Court has found that customers are likely to confuse the counterfeit cigarettes with the authentic Newport brand cigarettes, the Court holds that Lorillard has proved irreparable injury in its request for injunctive relief. As to the second factor, equitable relief is the best way to prevent further consumer confusion between authentic and counterfeit cigarettes. When considering the third factor, hardships of the remedy, the Court finds that a permanent injunction should issue because there is no harm to the Defendant because

an injunction will only require Defendant to comply with the Lanham Act and with the terms of the Agreement signed with Lorillard. In contrast, Plaintiff faces potential loss of sales. Finally, under the last factor, it is in the public's interest to be certain that consumers are not misled in the future. *Audi,* 469 F.3d at 550. An injunction barring Defendant from using counterfeit cigarettes assures there will be no further consumer confusion and the trademark holder's interest in the mark will be protected. Accordingly, this Court grants Plaintiff Lorillard's request.

## H. Attorney Fees and Costs

The Lanham Act authorizes an award of "reasonable attorney fees to the "prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). An award of attorney's fees and costs is proper when the Defendant's actions can be characterized as malicious, fraudulent, deliberate or willful. *Ford Motor Co. v. Cross,* 441 F. Supp. 2d 837, 854 (E.D. Mich. 2006). The Ohio Revised Code provides for fees and costs in § 4165.03(b), and provides that "attorney's fees may be assessed against a defendant if the court finds that the defendant has willfully engaged in a trade practice ... knowing it to be deceptive."

In this case, there is a genuine issue of material fact as to whether Defendant's act of offering the counterfeit cigarettes for sale was malicious, fraudulent, deliberate or willful. Therefore, the Court cannot conclude that Plaintiff is entitled to attorney fees and costs.

## III. CONCLUSION

For the reasons set forth herein, the Defendant's motion for summary judgment, damages and an injunction is GRANTED. A permanent injunction is also hereby ORDERED against the Defendant's continued use of counterfeit versions of Plaintiff's marks. A hearing to determine the amount of the damages to which Plaintiff is entitled will be held on November 7, 2011 at 1:30 p.m.

Plaintiff shall submit a proposed order for permanent injunction within 14 days of this order.

IT IS SO ORDERED.

DATE: October 21, 2011          */s/ John R. Adams*_____
                                Judge John R. Adams
                                UNITED STATES DISTRICT COURT